FILED

JAN - 5 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Criminal Action No. 09-00153-2 (RCL) |
| v. | ) |
| WELDON GORDON, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the Court is petitioner Weldon Gordon's Motion, ECF No. 268, to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255. Mr. Gordon alleges that he was denied his counsel of choice in violation of the Sixth Amendment and that he had ineffective assistance of counsel at his trial and sentencing. Mr. Gordon asks the Court to vacate his conviction and sentence. Upon consideration of the Motion [268], the entire record herein, and the applicable law, petitioner's Motion will be DENIED.

### I. BACKGROUND

#### A. Defendant's Charges and Conviction

In 2008, Mr. Gordon was charged with two counts of unlawful distribution of 50 grams or more of crack cocaine. *See* Case No. 08-cr-281 (RMU), ECF No. 1. Following his arrest in that case, the government's confidential DEA informant was identified in discovery. Mr. Gordon subsequently shot the informant three times, killing him in order to prevent him from testifying. ECF No. 235 at 4–5. In 2011, Mr. Gordon was indicted for the drug charges, in addition to conspiracy to obstruct justice by tampering with a witness and tampering with a witness, victim, or informant by killing. ECF No. 108. In 2012, a jury convicted Mr. Gordon on

all counts, ECF. No. 219, and the Court sentenced him to life imprisonment, ECF No. 245. On September 9, 2013, Mr. Gordon filed the instant § 2255 motion, in which he argues the Court should vacate his conviction and sentence.

**B. Defendant's Counsel**

From the time of his initial charges through his sentencing, Mr. Gordon was represented by approximately seven attorneys, several of whom were not to Mr. Gordon's satisfaction. *See* ECF No. 266-2 at 22:13. Even in the case of his attorneys who ultimately withdrew because of a conflict, Mr. Gordon had expressed dissatisfaction. *Id.* On August 25, 2011, he filed a Motion to Appoint New Counsel, complaining, inter alia, that his lawyer Mr. Onorato had failed to effectively communicate with him, investigate his leads, and interview defendant's alibi witnesses. ECF No. 166. After the Court found a conflict of interest and permitted the attorneys' withdrawal, it appointed Thomas Saunders to represent Mr. Gordon.

Mr. Gordon subsequently filed a Motion to Appoint New Counsel, asserting that Mr. Saunders' assistance had been "at best ineffective." ECF No. 182. He asserted that Mr. Saunders stated he did not do investigative work, showed "lack of motivation by stating false information in order for [Mr. Gordon] to take a plea Deal," failed to effectively communicate with the defendant, and was "very unprofessional by showing he ha[d] no interest in this matter." *Id.* The Court held a status conference and conducted a detailed inquiry into Mr. Gordon's allegations. *See* ECF No. 266-1. The Court heard from both Mr. Gordon and Mr. Saunders and concluded that it had "heard nothing from [defendant] that even remotely suggests Mr. Saunders is not doing his job." *Id.* at 11:25–12:1. The Court denied Mr. Gordon's motion and set a trial date in February, 2012.

2

On October 27, 2011, Mr. Gordon moved to retain substitute counsel, Brian McDaniel, and continue the trial date. ECF No. 185. Mr. McDaniel stated he had another trial that would run into April 2012, and could only serve as Mr. Gordon's counsel if the trial were continued until after that date. *Id.* at ¶¶ 3–4. In a status conference, the Court heard from Mr. McDaniel, Mr. Saunders, counsel for the United States, and Mr. Gordon. ECF No. 266-2. The Court weighed Mr. Gordon's right to counsel of choice against the interest in prompt administrative of justice and found "no reason to believe that [Mr. Saunders] will not proceed in a fashion that protects Mr. Gordon's rights and represents him at trial to the best of his ability, which is considerable." *Id.* at 29:16–19. In light of the logistical difficulties involved in postponing the trial and because it had already been postponed before, the Court concluded that "beginning anew, yet again, would be a disruption." *Id.* at 29:25–30:1. The Court thus denied Mr. Gordon's motion to continue the trial and retain substitute counsel.

Mr. Gordon's trial began on February 3, 2012, and he was convicted on February 16, 2012.

On February 27, 2012—before Mr. Gordon's sentencing—Mr. Gordon's counsel reported a threatening phone call from Mr. Gordon's mother to Judge Urbina. *See* Case No. 11-cr-178, ECF No. 49 ¶ 2. The government moved for the issuance of a bench warrant in a then-pending case against Mr. Gordon's mother,[1] requesting that she be detained without bond. *Id.* ¶ 3. The Court granted the motion, though no trial was held because she pleaded guilty to subordination of perjury a few weeks later.

Mr. Gordon subsequently argued that this created a conflict of interest between he and Mr. Saunders because of Mr. Saunders' role in sending his mother to jail. At sentencing, Judge

---

[1] Mr. Gordon's mother, as well as his sister, pleaded guilty to perjury for falsely testifying to the grand jury that they were with Mr. Gordon at the time of the murder. *See* Case No. 11-cr-178, ECF Nos. 54, 82.

3

Urbina noted that it was not Mr. Saunders that had returned his Mr. Gordon's mother to jail, but a judge. ECF No. 266-5 at 6:6–11. The Court also considered Mr. Gordon's complaints about the ineffectiveness of his trial counsel as well as Mr. Saunders' response, before deciding to keep him on as counsel and imposing Mr. Gordon's sentence. *Id.* at 31:7–22; 65:12–67:17.

## II. LEGAL STANDARD

Section 2255 permits a prisoner serving a federal sentence to move the court to "vacate, set aside, or correct the sentence." 28 U.S.C. § 2255; *see also Daniels v. United States*, 532 U.S. 374, 377 (2001). Section 2255 authorizes the sentencing court to discharge or resentence a prisoner if the court concludes that it was without jurisdiction to impose the sentence, the sentence was in excess of the maximum authorized by law, or the sentence is otherwise subject to collateral attack. *Id.*; *see also United States v. Addonizio*, 442 U.S. 178, 185 (1979). Relief under § 2255 is an "extraordinary remedy" and is generally only granted "if the challenged sentence resulted from a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Thompson*, 587 F. Supp. 2d 121 (D.D.C. 2008) (citing *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992)) (citations omitted). The defendant carries the burden of sustaining his contentions by a preponderance of evidence. *United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973).

## III. ANALYSIS

In the instant case, the petitioner claims that he was denied his counsel of choice in violation of the Sixth Amendment and that he received ineffective assistance of counsel at both his trial and sentencing.

4

### A. Counsel at Trial

*1. Choice of Counsel and Continuance*

Mr. Gordon asserts that "the failure of the court to allow [him] his counsel of choice was a clear violation of the 6th Amendment." Pet.'s Mot. 2. He argues that the Court improperly denied his request to appoint new counsel, including Mr. McDaniel, after he "repeatedly expressed displeasure with the lawyer that the Court forced upon him. *Id.* at 2–3. On October 27, 2011, Mr. Gordon moved to retain Brian McDaniel as substitute counsel and continue the trial date. ECF No. 185. While the entry of the new attorney was uncontested, the continuance was opposed and subsequently denied by the Court.

"[T]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Coplin & Drysdale, Chartered v. United States*, 491 U.S. 624–25 (1989). However, this right is subject to limitations: The public has a strong interest in efficient and effective resolution of cases. When a continuance is sought, the "right to select counsel must be carefully balanced against the public's interest in the orderly administration of justice." *United States v. Burton*, 584 F.2d 485, 489 (D.C. Cir. 1978). A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006) at 152 (internal citations omitted). Once adequate opportunity to retain counsel has been provided, the Court is "free to deny a continuance to obtain additional counsel" if it reasonably concludes that the delay would be unreasonable, upon evaluation of the totality of the circumstances. *Burton*, 584 F.2d at 490. To determine whether a delay is reasonable, the Court must weigh all surrounding facts and circumstances, including:

5

> [T]he length of the requested delay; whether other continuances have been requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay is for legitimate reasons, or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; whether the defendant has other competent counsel prepared to try the case, including the consideration of whether the other counsel was retained as lead or associate counsel; whether denying the continuance will result in identifiable prejudice to defendant's case, and if so, whether this prejudice is of a material or substantial nature; the complexity of the case; and other relevant factors which may appear in the context of any particular case.

*Id.* at 490-91 (internal citations omitted). In evaluating these factors, the D.C. Circuit has found that "only a slight inconvenient or delay may be sufficient grounds for rejecting defendant's request for a continuance to enable him to retain an additional counsel in a simple case where he has already retained three or four other attorneys." *Id.* at 492.

In the case at issue, the court weighed all the relevant factors and found the delay unreasonable; thus, denying the continuance was a proper exercise of its discretion. In the October 31, 2011 conference, Judge Urbina outlined the relevant law before finding the "length of delay contemplated lengthy," ECF No. 266-2 at 30:5–6, and noted that the trial had been postponed previously, *id.* at 29:24. He pointed to the logistical problems the delay would create. *Id.* at 29:20–22. Specifically, he was concerned that "witnesses ha[d] been prepped more than once for trial, that the memories of witnesses are adversely affected by the passage of time; and that there are safety issues." *Id.* at 24:15–19. He noted that Mr. Gordon had competent counsel in the case. *Id.* at 29:11–13. Finally, he added that he had "serious doubts" about Mr. Gordon's motives and believed his purpose to be "dilatory, purposeful and contrived." *Id.* at 30:9–22. Although Mr. Gordon complains that his relationship with Mr. Saunders was "strained," Pet'r's Mot. 1, a meaningful relationship between a client and his counsel is not guaranteed by the Sixth

6

Amendment. *Morris v. Slappy*, 461 U.S. 1, 11 (1983) ("[N]o court could possibly guarantee that a defendant will develop th[at] kind of rapport with his attorney.").

Because Judge Urbina considered all relevant factors while weighing the right to select counsel against the public's interest in the orderly administration of justice, he acted within the court's discretion when he denied a continuance of trial in order to accommodate a new attorney.

### 2. *Effectiveness of Counsel at Trial*

Mr. Gordon also asserts that his counsel was ineffective because Mr. Saunders "exhibited an attitude that the contours of the Petitioner's representation was [sic] his exclusively to design." Pet'r's Mot. 1. He alleges that "trial counsel was either unwilling or ill-prepared to mount anything resembling a competent defense, ill-prepared to address the expert witnesses presented by the government, ill-equipped to provide legal representation in a matter of this magnitude, ineffective insofar as the directives and desires of the defendant were ignored." *Id.* While such claims are barely addressed in Mr. Gordon's motion and very few facts are asserted, he does note that his attorney wrongly waived his presence on a teleconference and refused to call witnesses and ask questions as Mr. Gordon wished.

For a defendant to show ineffective assistance of counsel, he must identify both "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that "but for counsel's unprofessional errors, the results of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).

The conference Mr. Gordon references occurred on February 1, 2012 to address a legal matter: Mr. McDaniel's authority to issue subpoenas given that he was not counsel of record. Mr. Saunders waived Mr. Gordon's appearance at the conference. This was not error. Such a

waiver was permissible pursuant to Federal Rule of Criminal Procedure 43(b)(3), which states that a criminal defendant "need not be present" at a hearing that "involves only a conference of hearing on a question of law." Fed. R. Crim. P. 43(b)(3). Furthermore, Mr. Gordon has not suggested what impact his presence would have had, and indeed Mr. McDaniel—whom Mr. Gordon preferred as his counsel—did not object. Mr. Gordon has thus not shown or even suggested that that the results of the proceeding would have been different had he been present. His absence during this teleconference does not support a finding of ineffective assistance of counsel.

Mr. Gordon also alleges that Mr. Saunders refused to call certain witnesses and ask certain questions as directed by Mr. Gordon. Again, Mr. Gordon fails to establish any resulting prejudice. He presents no evidence that the result would have been different if his preferred witnesses had been questioned. Indeed, he has not made *any* specific allegations regarding the alleged error. Regardless, the decision to call witnesses is within counsel's discretion. Counsel's performance must be "reasonable under prevailing professional norms." *Strickland*, 466 U.S. at 688. The DC Bar Rules of Professional Conduct, which specifically establish professional norms, state that counsel "is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so . . . [i]n questions of means, the lawyer should assume responsibility for technical and legal tactical issues." Cmt. To D.C. R. Prof. Conduct 1.2. Counsel "has—and must have—full authority to manage the conduct of the trial." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988). Because Mr. Saunders properly made tactical trial decisions, and at any rate Mr. Gordon fails to identify specific error that would have led to different results, he is not entitled to relief.

**B. Counsel at Sentencing**

Additionally, Mr. Gordon argues that his sentencing should be set aside because of the alleged conflict of interest that developed after his conviction, but prior to his sentencing. Pet.'rs Mot. 3. He does not, however, explain why the alleged conflict would require such an action.

Ineffective assistance of counsel claims are evaluated under either the standard set forward in *Strickland*, 466 U.S. at 688, or, where there is an actual conflict of interest, the less demanding *Cuyler* standard, *U.S. v. Berkeley*, 567 F.3d 703, 708 (D.C. Cir. 2009) (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)). A defendant prevails on a conflict of interest claim under *Cuyler* if the defendant can show (1) that his lawyer acted under "an actual conflict of interest" and (2) that the "conflict had some negative effect upon his defense (defined as 'an actual lapse in representation')." *United States v. Shark*, 51 F.3d 1072, 1075–76 (D.C. Cir. 1995). A defendant who proves an actual conflict of interest thus avoids the more stringent requirement of proving that the lawyer's "deficient performance prejudiced the defense," *Strickland*, 466 U.S. at 687, for such prejudice is presumed, *United States v. Farley*, 72 F.3d 158, 166 (D.C. Cir. 1995).

In its opposition, the government "presumes that defendant is proceeding under the *Cuyler* standard and its progeny, which is more favorable to him in any event." Opp'n 15 n.21. Indeed, because the Court finds that Mr. Gordon's claim fails to satisfy either prong of the *Cuyler* test, his claim could not satisfy the *Strickland* standard either.

Mr. Gordon has not established an actual conflict of interest. To show an actual conflict, the defendant must show that the lawyer was "required to make a choice advancing his own [or another client's] interests to the detriment of [defendant's] interest," and that the alleged conflict prevented defendant's counsel from pursuing some appropriate strategy or tactic. *United States v. Thomas*, 114 F.3d 228, 252 (D.C. Cir. 1997). A "hypothetical conflict having no effect on trial counsel's representation" is insufficient. *United States v. Taylor*, 139 F.3d 924, 931 (D.C.

Cir. 1998) (citing *Cuyler*, 446 U.S. at 350; *Bucuvalas v. United States*, 98 F.3d 652, 657 (1st Cir. 1996); see also *United States v. Tolson*, 372 F Supp. 2d 1, 16–17 (D.D.C. 2005) ("[A]ttenuated or speculative hypothetical conflicts do not warrant relief under *Cuyler*.").

When Mr. Gordon's mother left a threatening message for Mr. Saunders, Mr. Saunders rightfully reported the threat to the court. Mr. Gordon alleges that after this, he "had to be concerned about [his counsel] currying favor from the government in order to prosecute a case against someone that he obviously wanted jailed, by selling him out." Pet'r's Mot. 13. But such a hypothetical division of interest does not warrant relief under *Cuyler* where there is no evidence that Mr. Gordon's counsel "*actually acted* in a manner that adversely affected his representation by doing something, or refraining from doing something, *that a non-conflicted attorney would not have done.*" *Tolson*, 372 F. Supp. 2d at 13.

Even if a conflict did exist, Mr. Gordon has failed to show any adverse effect at his sentencing. Indeed he doesn't seem to allege one at all. Regardless, the facts tend to show the opposite. Mr. Saunders argued that the government's guideline calculation was incorrect based on the jury findings, and the Court noted that his argument was "well thought out." ECF No. 266-5 at 22:9–13. He also argued that the facts were inconsistent with murderous intent. *Id.* at 37:4–16. These facts suggest, and Mr. Gordon fails to allege otherwise, that there were no adverse effects of a conflict at sentencing.

Because the Court finds that there was no actual conflict of interest and that regardless, there is no evidence of any adverse effect, the alleged conflict here does not amount to ineffective assistance of counsel under either the *Cuyler* or *Strickland* standards.

IV. CONCLUSION

For the reasons set forth in this opinion, Mr. Gordon's Motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. 2255 is DENIED.

A separate order shall issue this date.

Signed December 31, 2014 by Royce C. Lamberth, United States District Judge.

*/s/ Royce C. Lamberth*